Jolly's Motor Livery Company v. Commissioner. Jolly Cab Company v. Commissioner. D. L. Jolly, Sr. v. Commissioner. D. L. Jolly, Sr., and Berenice Jolly, Husband and Wife v. Commissioner.Jolly's Motor Livery Co. v. CommissionerDocket Nos. 36607, 36745, 41269, 41270.United States Tax CourtT.C. Memo 1957-231; 1957 Tax Ct. Memo LEXIS 19; 16 T.C.M. (CCH) 1048; T.C.M. (RIA) 57231; December 16, 1957*19 1. Petitioner D. L. Jolly, Sr., the principal officer and controlling stockholder of the corporate petitioners, directed his employees to divert checks and other receipts from the corporate petitioners into his hands. These funds were never recorded on the books and records of the corporations and were not reported on the tax returns of the corporate petitioners. The funds were deposited by petitioner D. L. Jolly, Sr., in his personal bank account or in bank accounts maintained by him for members of his family. The diverted sums were not reported on his individual tax returns. Held: the diverted funds are taxable as ordinary income to the corporate petitioners. Held further: the diverted funds are taxable as informal dividends to the individual petitioners. 2. Rental of $6,000 was paid by petitioner Jolly Cab Company in 1946 for the use of a vacant lot purchased by petitioner D. L. Jolly, Sr., in the name of one of his sons. Held: reasonable rental of $1,200 for the use of the lot is allowable to petitioner Jolly Cab Company as a deduction. Held further: excessive rental of $4,800 is taxable as an informal dividend to petitioner, D. L. Jolly, Sr. 3. Salaries to the wife and son*20 of petitioner D. L. Jolly, Sr., were paid by petitioner Jolly Cab Company and other corporations. Held: because no substantial services were performed by the wife and son, the salary payments made by petitioner Jolly Cab Company were unreasonable and are not allowable as deductions. Held further: all excessive salaries paid by the corporations involved are taxable to petitioner D. L. Jolly, Sr., as informal dividends. 4. A check in the amount of $3,381.75 was deposited to the bank account of petitioner Jolly Cab Company and credited on the Cab Company books to the notes payable account. Held: on the facts, the check was income to petitioner Jolly Cab Company and an informal dividend to petitioner D. L. Jolly, Sr. 5. Petitioner D. L. Jolly, Sr., sold equipment to a corporation in 1948, in return for which the corporation issued promissory notes dated April 15, 1949, and due six months from that date. The notes were cancelled later in 1949 upon the issuance of 110 shares of stock of the corporation. Held: respondent incorrectly determined that the sale price of the equipment was income to petitioner, D. L. Jolly, Sr., in 1948. 6. Respondent determined that items of income including*21 income from proprietorships, rents, dividends, capital gains, and "Other Income" were omitted from the tax returns of the individual petitioners. Held: on the facts, respondent's determinations are sustained. 7. Petitioner D. L. Jolly, Sr., maintained "trustee" bank accounts for his wife and two sons in which he alone made deposits. Held: on the facts, the bank accounts in the names of the sons were owned by the sons, although managed by petitioner, D. L. Jolly, Sr., and the income therefrom is not taxable to petitioner D. L. Jolly, Sr. Held further: on the facts, interest income from the bank account maintained in the name of the wife was properly taxed to petitioner D. L. Jolly, Sr. 8. Held: on the facts, in each of the taxable years at least part of the deficiency of each of the petitioners was due to fraud with intent to evade tax and respondent properly determined additions to tax under section 293(b), I.R.C., 1939. Held further: the statute of limitations has not run as to any of the petitioners on any of the taxable years involved. Held further: respondent correctly determined additions to tax for substantial underestimation of estimated tax under section 294(d)(2), I.R. *22 C. 1939, against the individual petitioners for the years 1947, 1948 and 1949. Taylor Malone, Jr., Esq., 2903 Sterick Building, Memphis, Tenn., for the petitioners. Herman Wolff, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: These consolidated proceedings involve deficiencies in income tax, excess profits tax, declared value excess profits tax and additions to tax of petitioners, determined by respondent as follows: Jolly's Motor Livery Company,Docket No. 36607Income TaxAddition to TaxYearDeficiencySec. 293(b)3-31-47$ 3,493.29$1,746.653-31-481,233.62616.813-31-491,201.93600.973-31-501,950.79975.40Jolly Cab Company, Docket No. 367455-31-46$ 1,643.65$ 821.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,016.884,827.995-31-485,284.953,382.74*23 DeclaredValueExcess ProfitsTaxAddition to TaxYearDeficiencySec. 293(b)5-31-46$ 1,560.92$ 780.465-31-46$ 5,243.34$2,621.67D. L. Jolly, Sr., Docket No. 41269IncomeAdditionAddition toTaxto TaxTax Sec.YearDeficiencySec. 293(b)294(d)(2)1946$25,113.99$12,557.00194737,274.1618,637.08$2,349.02D. L. Jolly, Sr., and Berenice Jolly,Docket No. 412701948$30,439.12$15,219.56$1,918.08194927,028.5713,514.291,556.94With respect to Docket Numbers 41269 and 41270, respondent filed an amendment to amended answer in which he claimed under section 272(e) of the Internal Revenue Code of 1939, any increased deficiencies which might result if this Court should determine that petitioners made expenditures of cash for the support of the stepmother of petitioner D. L. Jolly, Sr., in 1947, 1948, and 1949, and expenditures of cash in 1946 and 1947 for repairs and a new roof on certain rental property. In the event of such a holding, respondent claimed that "Other Income" of petitioners, as determined in the notice of deficiency, should be increased by the amount of such cash*24 expended in the respective years. Respondent also claimed increased deficiencies for the year 1948 in the event that this Court held that the amount of $11,049.26, representing the sale price of certain equipment allegedly sold by D. L. Jolly, Sr., in 1948, should be included in the income of D. L. Jolly, Sr., in 1948. Respondent concedes that a check in the amount of $1,944.08 was improperly included in the income of petitioner D. L. Jolly, Sr., for the year 1947. Respondent also concedes that for the year 1947 an item of advertising expense in the amount of $1,316.61 was proper and should have been allowed. These concessions will be reflected in a recomputation. The issues for decision are: D. L. Jolly, Sr., Docket No. 41269, and D. L. Jolly, Sr., and Berenice Jolly, Docket No. 41270 1. Whether for the taxable years 1946-1949, inclusive, certain amounts are includible in petitioners' income as "informal dividends;" 2. Whether for the taxable years 1946-1949, inclusive, certain amounts are includible in petitioners' income as "proprietorship" income; 3. Whether for the years 1946, 1947 and 1948 petitioners' net rental income should be increased by certain amounts; *25 4. Whether for the taxable years 1946-1949, inclusive, petitioners' interest income should be increased by certain amounts; 5. Whether petitioners' income from dividends for the years 1948 and 1949 should be increased; 6. Whether certain amounts should be included in petitioners' net income as "Other Income" for each of the years 1946 to 1949, inclusive; 7. Whether petitioners' income from capital gains for the years 1948 and 1949 should be increased; 8. Whether petitioners overstated the total amounts claimed as deductions for charitable contributions for each of the taxable years 1946 to 1949, inclusive; 9. Whether respondent correctly disallowed a dependency credit for the stepmother of petitioner D. L. Jolly, Sr., for each of the years 1947, 1948 and 1949; 10. Whether a part of the deficiency determined for each of the taxable years was due to fraud with intent to evade tax; 11. Whether the assessment and collection of deficiencies and additions to tax for the years 1946 and 1947 are barred by the statute of limitations; 12. Whether respondent correctly determined an addition to tax for substantial underestimation of estimated tax for each of the years 1947, 1948*26 and 1949; 13. Whether from the returns for each of the years 1946 and 1947, petitioner D. L. Jolly, Sr., omitted gross income properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return; 14. Whether petitioner D. L. Jolly, Sr., is collaterally estopped from contesting respondent's determination that part of the deficiencies for each of the years 1946 to 1949, inclusive, was due to fraud with intent to evade tax, by reason of his conviction of income tax evasion for the years 1946 to 1949, inclusive. Jolly's Motor Livery Company, Docket No. 36607 1. Whether petitioner's income for each of the fiscal years ended March 31, 1947, 1948, 1949 and 1950 was understated; 2. Whether a part of the deficiencies for the fiscal years 1947 to 1950, inclusive, was due to fraud with intent to evade tax; 3. Whether the assessment and collection of the deficiency and addition to tax for the fiscal year ended March 31, 1947, are barred by the statute of limitations. Jolly Cab Company, Docket No. 36745 1. Whether petitioner's income for each of the fiscal years ended March 31, 1946, 1947 and 1948 was understated; 2. Whether petitioner's*27 excess profits net income and net income for declared value excess profits tax for the fiscal year ended May 31, 1946 should be increased by $11,825.16; 3. Whether for the year ended May 31, 1946, respondent correctly decreased petitioner's equity invested capital at the beginning of the year in the amount of $2,443.93 with a corresponding decrease in the excess profits credit for that year; 4. Whether a part of the deficiencies for the years 1946 to 1948, inclusive, was due to fraud with intent to evade tax; 5. Whether the assessment and collection of the deficiencies and additions to tax for each of the years 1946 and 1947 are barred by the statute of limitations. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners D. L. Jolly, Sr., (hereinafter sometimes referred to as Jolly) and Berenice Jolly (hereinafter referred to as Berenice) are husband and wife who resided in Memphis, Tennessee, during the years 1946 to 1949, inclusive. For the years 1946 and 1947 Jolly and Berenice filed separate individual income tax returns with the collector of internal revenue for the district of Tennessee. For the years 1948 and 1949 they filed joint returns*28 with the collector of internal revenue for the district of Tennessee. The returns for all years were filed on the cash basis. Petitioner Jolly came to Memphis in 1919 and was employed as a mechanic for a tractor company. In 1923 he went in business for himself and formed Jolly's Motor Livery Company, a drive-it-yourself business. Thereafter he organized the Jolly Cab Company and the Jolly Maintenance Service. Petitioners Jolly and Berenice have two sons, David L., Jr., and William C. Jolly. David L. Jolly, Jr., (hereinafter referred to as Dave) was born in 1924, and William C. Jolly (hereinafter referred to as William) was born in 1933. For the years 1946 and 1947, Dave filed individual income tax returns with the collector of internal revenue for the district of Tennessee, and for the years 1948 and 1949, Dave and his wife filed joint returns. William filed individual income tax returns with the collector of internal revenue for the district of Tennessee for the years 1946, 1948 and 1949. Jolly paid the income taxes shown as due on all of these returns. Petitioner Jolly's Motor Livery Company (hereinafter referred to as Motor Livery), is a Tennessee corporation which was incorporated*29 March 2, 1923. Prior to and during the years 1946 to 1950, inclusive, it operated an automobile and truck rental business in Memphis, Tennessee, with its principal place of business at 110 South Second Street and had a fiscal year ending March 31. For the fiscal years ended March 31, 1947, 1948, 1949 and 1950, Motor Livery filed corporation income tax returns with the collector of internal revenue for the district of Tennessee. The outstanding capital stock of Motor Livery consisted of 200 shares common of $25 par value, all of which was issued to and owned by Jolly during its fiscal years 1946 to 1950, inclusive. The principal officers and directors of Motor Livery during its fiscal years 1946 to 1950, inclusive, were Jolly, president, Leland Peyton, vice-president and assistant treasurer, Harold Wilkins, vice-president, and Berenice, secretary. Petitioner Jolly Cab Company (hereinafter referred to as Cab Company), is a Tennessee corporation which was incorporated December 9, 1929 and operated a taxicab business in Memphis, Tennessee, prior to and throughout the years 1946 to 1949, inclusive, with its principal place of business at 300 Court Avenue, and had a fiscal year ending*30 May 31. For the fiscal year ended May 31, 1946, Cab Company filed a corporation income and declared value excess profits tax return with the collector of internal revenue for the district of Tennessee. For the fiscal years ended May 31, 1947 and 1948 it filed corporation income tax returns with the collector of internal revenue for the district of Tennessee. The outstanding capital stock of Cab Company during its fiscal years 1946 to 1950, inclusive, consisted of 400 shares of Class B preferred stock of $10 par value issued to and owned by Jolly, and 1,000 shares of common stock of no par value all of which was issued to and owned by Jolly prior to December 1, 1945. Thereafter Jolly made transfers of ownership of 35 shares of common stock each to his wife, Berenice, his son Dave and his son William, on each of the following dates: December 1, 1945, February 1, 1946, December 20, 1947, December 22, 1949, and December 26, 1949.The stock certificates representing the shares transferred by Jolly to his wife and sons were signed by him as president and by Berenice as treasurer of Cab Company. All of the stock certificates were kept by Jolly in his files at 110 South Second Street. Berenice*31 and her two sons signed the stubs of the stock certificates. The principal officers and directors of Cab Company during its fiscal years 1946 to 1950, inclusive, were Jolly, president, Harold Wilkins, vice-president, Leland Peyton, assistant treasurer, and Berenice, secretary. Jolly's Maintenance Service was a sole proprietorship owned by Jolly. It was organized prior to 1946 and during the years 1946 to 1949, inclusive, operated an automobile repair business with its principal place of business at 300 Court Avenue, Memphis, Tennessee. Primarily, Jolly's Maintenance Service performed repair work and serviced the cabs and vehicles for Cab Company and Motor Livery. Some work was performed for the public. The books and records of Jolly's Maintenance Service recorded labor, parts, gasoline, oil and items of that nature used by each vehicle. The books were kept on an accrual basis. The amounts of these items were transferred to a summary sheet, and at the end of each month Cab Company and Motor Livery were billed. These corporations periodically made payments on their accounts with Jolly's Maintenance Service. Car Clinic, Inc., was a Tennessee corporation incorporated October 27, 1947, and*32 from its organization and throughout 1948 and 1949 operated an automobile repair business with its principal place of business at 230 Gayoso, Memphis, Tennessee. The entire outstanding capital stock of Car Clinic, Inc., consisted of 10 shares of Common stock of $100 par value issued to Dave but one-half of which was stated to be held in trust by Dave for the benefit of William by Declaration of Trust dated February 10, 1948. The officers and directors of Car Clinic, Inc., from its organization in 1947 and throughout the years 1948 and 1949 included Dave, Leland Peyton, Harold Wilkins and Jolly. United Parcel Service, Inc., is a Tennessee corporation incorporated November 1, 1949 and from the time of its organization has operated a delivery business in Memphis, Tennessee, with its principal place of business at 150 Hernando Street. The outstanding capital stock of United Parcel Service, Inc., in 1949 consisted of 20 shares of common stock of $100 par value issued to Dave. The officers and directors of United Parcel Service, Inc., in 1949 were Dave, Leland Peyton, W. B. Brown, Harold Wilkins and Jolly. Petitioner Jolly operated his businesses from two addresses: 300 Court Avenue*33 and 110 S. Second Street in Memphis, Tennessee. J. Harold Wilkins supervised the operations at 300 Court Avenue and Leland Peyton supervised the operations at 110 S. Second Street. At Court Avenue the operation of Cab Company and Jolly's Maintenance Service were conducted. The operations of Motor Livery and the Car Clinic were conducted at 110 S. Second Street. Peyton and Wilkins were paid a salary, plus five per cent of the net profits of Cab Company, Motor Livery, United Parcel Service, Car Clinic and Jolly's Maintenance Service. Petitioner Jolly maintained his personal office at 110 S. Second Street. Usually, the informal meetings of the officers and directors of the businesses were held at this address. Petitioner Jolly maintained, in addition to his personal and commercial checking accounts, several savings accounts for members of his family. A trustee account with Leader Federal Savings and Loan Association (hereinafter referred to as Leader Federal) entitled "D. L. Jolly, Trustee for Berenice J. Jolly" was opened on December 30, 1941, with a deposit of $4,000 and was maintained continuously up to and throughout the taxable period. The account was still open on January 18, 1954. Two*34 similar trustee accounts with Leader Federal entitled "D. L. Jolly, Jr., by D. L. Jolly, Sr., Trustee," and "William C. Jolly, by D. L. Jolly, Jr., Trustee," were opened on January 10, 1940. The account for Dave was opened with a deposit of $5,000 and was maintained continuously until November 3, 1949, at which time the balance in the account was transferred to a similar account in Dave's name. The trustee account for William was opened with a deposit of $2,040.88 and was maintained continuously until November 3, 1949, at which time the balance remaining in the account was transferred to a similar account entitled "Mr. Dave Jolly, Jr., Trustee for William C. Jolly." The trustee account for William with Dave as trustee was opened pursuant to a trust agreement dated November 3, 1949. The trustee accounts maintained by petitioner Jolly for his wife and two sons did not arise as the result of formal trust agreements. Jolly alone made deposits in and withdrawals from the accounts. Deposits made by Jolly to the accounts maintained for Dave and William were kept segregated from Jolly's personal funds. None of the funds deposited in the trustee accounts for Dave and William were used by*35 Jolly for his own purposes. Dave and William did not have savings accounts at Leader Federal in their own names until November 3, 1949, when Jolly transferred the balances in the trustee accounts to the accounts opened on that date in the names of Dave and William. Berenice maintained her own savings account at Leader Federal. This account was opened on December 2, 1946, and was maintained continuously throughout the taxable period. The account was still open on January 18, 1954. No funds were transferred from the trustee account maintained by Jolly for Berenice to Berenice's personal savings account at Leader Federal. The interest earned by the trustee accounts maintained by Jolly was reported by Berenice, Dave and William on their tax returns. On January 2, 1948, petitioner Jolly withdrew $24,000 from the trustee account at Leader Federal in the name of D. L. Jolly, Jr., and $7,500 from the trustee account in the name of William C. Jolly. These funds were loaned to Motor Livery. On April 1, 1948, two promissory notes, payable on demand and bearing six per cent interest, were executed by Jolly as president of Motor Livery. One note, in the amount of $24,000, was payable to Dave*36 or order, and the other note, in the amount of $7,500, was payable to William or order. Both notes were secured by a deed of trust on property located at 110 S. Second Street, Memphis, Tennessee, which deed of trust was filed for registration on January 22, 1949. Regular monthly payments were made on these notes by Motor Livery and these payments were deposited in the respective accounts maintained in the names of Dave and William. During 1947 petitioner made withdrawals totaling $29,000 from the trustee account at Leader Federal entitled D. L. Jolly, Trustee for Berenice J. Jolly. These funds were loaned to Cab Company. On June 1, 1948, a promissory note, payable on demand to bearer with interest at six per cent, was executed by Jolly as president of Cab Company in this amount. Berenice kept the note in her safe deposit box. This note was secured by a deed of trust filed for registration on January 22, 1949. A schedule of amortization of this indebtedness was drawn by Jolly's accountant which showed payments of interest and principal to be made by Cab Company. Payments on the note were not distributed but were maintained in an accrual account in Berenice's name on the books of Cab*37 Company. On August 9, 1946, Jolly sold shares of Gill Realty Company stock for $2,432. This stock had been acquired in November 1944 at a cost of $1,000. The sale was not reported on Jolly's tax return for that year. During the years 1946 to 1949, inclusive, certain checks made payable to Cab Company or Motor Livery were not recorded on the books of either of said corporations and were not deposited in the bank account maintained by either corporation but the majority of which were deposited by Jolly in his personal bank accounts. The remainder was not deposited or was deposited in accounts maintained for, and in the respective names of, the wife and two sons of Jolly. The following table sets forth the corporation to which the said checks were payable and the classification of the purposes for which the checks were drawn: Jolly's Motor Livery Corporation:1946194719481949Automobile Property Damage$ 226.02$ 225.00$ 1,139.41$ 513.50Automobile and Truck Rent47.398.504.634.49Real Estate Rent80.00440.00930.001,620.00Driving Lessons4.99128.52203.610Rebates on Automotive Equipment35.371,900.071,756.190Miscellaneous Other Items207.38928.7381.4332.50Totals$ 601.15$ 3,630.82$ 4,115.27$2,170.49Jolly Cab Company: Automobile Property Damage921.66$ 2,436.43$ 4,398.50$3,205.98Advertising Receipts3,398.343,368.263,327.752,663.33Real Estate Rent300.000100.000Rebates on Automotive Equipment339.254,777.843,553.14444.00Insurance Refunds and Dividends01,600.003,632.001,812.00Proceeds Sale of Real Estate001,750.000* Reimbursement of Expenses45.48448.61903.04349.75* Miscellaneous Other Items617.46429.50930.8080.00Totals$5,622.19$13,060.64$18,595.23$8,555.06*38 The amounts shown as "Automobile Property Damage" refer to checks and drafts payable to Motor Livery and Cab Company for automobile property damage claims. When a cab was wrecked or when a passenger in a cab was injured, a report was prepared listing the amount of personal injury and property damage involved. If Cab Company had a claim for damages, Wilkins usually prepared an estimate of the damage and presented it to the other party or to the insurance company for payment. When payments on these damage claims were made, they arrived at the Court Avenue office in the form of checks. The only record of receipt of these checks was a notation made by Wilkins on the accident report that the claim had been paid. The checks were placed in an envelope every morning and given to petitioner Jolly, according to his previous instructions. Any claims on damaged rental cars owned by Motor Livery were prepared by Peyton and payments turned over to Jolly in the same manner. The bookkeeper was never notified that these checks were turned over to Jolly. Both Peyton and Wilkins knew that receipts from damage claims*39 were not being entered on the books and records of the corporations. The "Advertising Receipts" of Cab Company represent monthly payments from the William E. Whaley Company for advertising carried on the backs of the cabs. When checks representing advertising receipts were received in the mail, Peyton turned these over to petitioner pursuant to the latter's instructions. None of these checks were entered on the books of the Cab Company. The "Rebates on Automotive Equipment" represented fleet discount payments paid by Ford Motor Co., Chrysler Corporation, General Motors, and International Harvester under fleet purchase agreements with Cab Company and Motor Livery. The payments made by these companies were reductions granted by the manufacturer of the purchase price of equipment purchased from local dealers. The "Insurance Refunds and Dividends" represents two types of items. The $1,600 received in 1947 was a return of a deposit put up several years earlier by Cab Company on certain insurance. At the time the deposit was made it was carried to the profit and loss statement of the Cab Company for that year. The $3,632 received in 1948 and the $1,812 received in 1949 were dividends*40 or refunds of premiums from group life insurance policies carried by Cab Company on its employees. The "Proceeds Sale of Real Estate" in the amount of $1,750 in 1949 represents a payment of that amount by the City of Memphis for the purchase of a portion of a lot owned by Cab Company. At the time of the sale, Cab Company reduced the land account on its balance sheet by the amount of the sale and treated that portion of the lot as being sold at cost. Petitioner Jolly had an arrangement with the Mid-South Oil Company for a wholesale rebate on gasoline purchased by his companies. These rebate checks were also turned over to petitioner Jolly and were not recorded on the books and records of the corporation. Certain other checks which could not be identified as to payee were deposited in the bank account of petitioner Jolly and were allocable as checks payable to Cab Company or Motor Livery. but not recorded on the books and records of those corporations, as follows. 1946194719481949Jolly's Motor Livery Corporation$ 345.74$ 227.51$114.73$ 311.43Jolly Cab Company2,695.151,289.19650.171,764.79Neither Wilkins nor Peyton kept the*41 books of Cab Company or Motor Livery. The receipts from these companies were normally sent to the office at 110 S. Second Street, where the books of Cab Company and Motor Livery were kept, and turned over to the bookkeeper or accounts receivable clerk for entry on the books. The Federal income tax returns of Cab Company and Motor Livery were prepared by the accounting firm of Bolin, Quinn and Ivy from the books and records of the companies. Income receipts of these corporations which were not on their books and records were not reported on their income tax returns. All of the income tax returns filed by Cab Company and Motor Livery for the corporate taxable years, except one, were sworn to as correct by Jolly as president. The return filed by Motor Livery for the fiscal year ended March 31, 1948, was sworn to as correct by Peyton as vice-president. In 1949, Jolly informed Peyton and Wilkins that the bonus arrangement with them was being discontinued because his businesses were losing money. Peyton and Wilkins discussed with Jolly the arrangement whereby certain checks were never entered on the corporate books but were handed over directly to Jolly. They pointed out that if these*42 checks were entered on the books of Cab Company and Motor Livery, those corporations would show a better profit. No agreement was reached and in 1950 Peyton and Wilkins went into a competing car and truck rental business of their own. Regular deliveries of Coca Cola were made to a coke machine located at the business address of Cab Company and another machine located at the address of Motor Livery. The income from sales of Coca Cola from these machines was not recorded on the books of either corporation during the years 1946 to 1949, inclusive, but was turned over to Jolly. In April of 1944, while Dave was with the Army in Italy, petitioner Jolly purchased a lot located at 150 S. Third Street, Memphis, Tennessee, in Dave's name. The purchase price of the property was $7,000. Funds to purchase the lot were obtained by a loan made in Dave's name. The lot was rented by Cab Company for $500 per month from the time of purchase until January 1, 1947. The lot was used for storing cabs. Beginning January 1, 1947, the lot was leased to Parkrite Parking System for $100 per month. The $6,000 rent paid by Cab Company in 1946 was deposited in the trustee account in the name of D. L. Jolly, *43 Jr., by D. L. Jolly, Sr., Trustee, at Leader Federal. Dave reported the $6,000 rent as income on his tax return for 1946. In each of the years 1946 to 1949, inclusive, petitioner Berenice received salary payments of $200 per month from Cab Company. The net amount of salary payments, after deduction for taxes, was usually deposited each month in the trustee account that Jolly maintained for Berenice. Jolly usually signed the payroll for Berenice and personally deposited the salary in the trustee account. For the years 1946 and 1947, Berenice reported the salary on her individual returns. For the years 1948 and 1949 Jolly and Berenice reported the salary on their joint returns. Berenice had no regular working hours with Cab Company. On occasion she would attend a drivers' safety meeting and serve refreshments to the drivers. At Christmas she wrapped packages and addressed envelopes for the drivers. She did not participate in any business discussions in which Jolly, Peyton and Wilkins were involved. For each of the years 1946, 1948 and 1949 Dave received a salary of $2,600 and for the year 1947 he received a salary of $2,650 from Cab Company. He had no regular hours and no regular*44 duties with Cab Company. The only services Dave performed for Cab Company consisted of furnishing some assistance in making up payrolls and in paying the drivers. The salary payments were deposited by Jolly in the trustee account he maintained for Dave. Until September of 1947, Jolly signed the payroll of Cab Company for Dave. Tri-State Trade School (hereinafter referred to as Tri-State) was a Tennessee corporation incorporated August 19, 1947, and from its organization and throughout the years 1948 and 1949 operated a school for the training of automobile mechanics with its principal place of business at 172 South Second Street, Memphis, Tennessee. The outstanding capital stock of Tri-State consisted of 160 shares of common stock of $100 par value. Twenty-five shares were issued on September 3, 1947, to Dave and 25 shares were issued on the same date to C. C. Humphreys. Tri-State issued 55 shares on June 28, 1949, to Dave and another 55 shares on the same date to C. C. Humphreys. One-half of the stock issued to Dave was stated by him to be held in trust for William by Declaration of Trust dated February 10, 1948. Petitioner Jolly helped organize Tri-State and performed services*45 for it, including the signing of checks issued by the school. He furnished most of the equipment used by the school in its classes. He attended directors' meetings and frequently visited the school to discuss business. He also put up the funds which went into the payment of the stock in Tri-State which was issued in Dave's name. Neither of the stock certificate stubs indicating receipt of the certificates was signed by Dave. One of the stubs was signed by Jolly for Dave. The stock certificates were kept by Jolly in his office. Jolly himself received no salary payments in his own name from Tri-State. The officers and directors of Tri-State from its organization in 1947 and throughout 1948 and 1949 included Dave, R. E. Kennedy, C. C. Humphreys and Jolly. Dave was president of the corporation and attended officers' and directors' meetings. He did not perform any regular duties and did not observe any regular working hours. He furnished some assistance to Kennedy in maintaining inventory and in contacting some employers concerning the students. His duties were primarily for the purpose of observation. Dave received salary from Tri-State for his services in the following amounts: $800*46 in 1947; $5,850 in 1948; and $4,500 in 1949. The regular salaries were paid in cash, but accrued salaries were paid by check. Dave reported the following amounts as salary from Tri-State on his tax returns: $800 in 1947; $3,850 for 1948; and $4,800 for 1949. The Memphis Dry Cleaning Institute (hereinafter referred to as Dry Cleaning) was a Tennessee corporation incorporated on October 21, 1948, and from the time of its organization and throughout 1949 operated a school to train students in dry-cleaning processes, with its principal place of business at 588 North Second Street, Memphis, Tennessee. The outstanding capital stock of Dry Cleaning from its organization in 1948 and throughout 1949 was 1,000 shares of common stock of $1.00 par value which was issued and held: 334 shares to R. E. Kennedy, 333 shares to Dave, and 333 shares to C. C. Humphreys. The stub of the stock certificate for the 333 shares issued in Dave's name was signed by Jolly. The certificate was kept by Jolly in his office files. Jolly performed substantial services for Dry Cleaning. He furnished the same amount of advice and assistance to Dry Cleaning as he did for Tri-State. He permitted Dry Cleaning to use*47 his name for credit purposes. Jolly received no salary in his own name from Dry Cleaning. The officers and directors of Dry Cleaning from the time of its organization in 1948 and throughout 1949 included R. E. Kennedy, Dave, C. C. Humphreys and Jolly. Dave had no regular duties at Dry Cleaning and spent little time there. The only services he performed consisted of some consultation with others interested in Dry Cleaning during the organizational period. Dave received a salary of $400 in 1948 and $2,300 in 1949 from Dry Cleaning. On his tax return for 1948 he reported salary income of $400 from Dry Cleaning and for 1949 he reported income of $1,900 from the same source. With three exceptions, the funds representing the salaries paid to Dave by Cab Company, Dry Cleaning and Tri-State were deposited in bank accounts controlled by Jolly as trustee. One check from Tri-State in the net amount of $665.10, dated December 6, 1948, was deposited by Dave in his personal account at Union Planters Bank. A check in the amount of $606.20 from Dry Cleaning was deposited on February 21, 1949, in Dave's personal account, and a third check, representing accrued salary from Dry Cleaning in the amount*48 of $345.20, dated December 22, 1949, was deposited by Dave in the trustee account at Leader Federal in the name of D. L. Jolly, Jr., Trustee for William C. Jolly. On October 9, 1947, two checks were deposited to the account of Cab Company at Union Planters National Bank and Trust Company. One check, in the amount of $1,618.25, was drawn on Jolly's personal bank account at National Bank of Commerce. The second check, in the amount of $3,381.75, was listed on the deposit slip opposite the name "Dave Jolly," but the check was not a withdrawal from any of Jolly's known bank accounts or the accounts of any member of his family. The bookkeeper for Cab Company did not know what this amount represented and did not know the source of the check. These two deposits, totaling $5,000, were credited on the notes payable account of Cab Company opposite the name "D. L. Jolly" on October 31, 1947. When Tri-State was organized, it needed automobile motors, transmissions, rear ends, carburetors, starters and other equipment for the students to use in their training. During the war, equipment of this nature had been stockpiled by Jolly Maintenance Service and with the war over the company was faced*49 with a surplus of automotive equipment. Petitioner Jolly offered to sell some of the equipment of Jolly Maintenance Service to Tri-State. Although the school did not have the capital to buy the equipment, an arrangement was made whereby Tri-State in July and August of 1948 acquired equipment from Jolly at a cost of $5,537.01, for which amount the school gave a non-interest-bearing promissory note dated April 15, 1949, and due six months from that date. At the same time, the school acquired additional equipment at a cost of $5,512.25. for which amount the school gave to C. C. Humphreys a similar promissory note dated April 15, 1949, due six months from that date. The additional equipment was also furnished by Jolly. These notes were cancelled on June 28, 1949, upon the issuance of 110 shares of stock of Tri-State, 55 shares in the name of C. C. Humphreys and 55 shares in Dave's name. Several years later, C. C. Humphreys paid Jolly for his (Humphrey's) share of the equipment sold to the school pursuant to this transaction. The price of the equipment was based on an estimate by three appraisers. The books of Jolly Maintenance Service, which were kept on an accrual basis, did not disclose*50 sales of automotive parts and assemblies during July and August of 1948 to Dave, C. C. Humphreys, and/or Tri-State. The audit report on Jolly Maintenance Service for the year ended December 31, 1948, did not show any amounts withdrawn from the business by Jolly for 1948 and no withdrawals were made on his capital account. The names of D. L. Jolly, Sr., Dave, and C. C. Humphreys do not appear on the list of unpaid trade customers' accounts of Jolly Maintenance Service as of January 25, 1949. No checks in the amount of $11,049.26, the total cost of the equipment sold to Tri-State in July and August of 1948, were issued by Jolly. The sale was not reported on petitioner Jolly's tax return for 1948. During the years 1946 to 1949, inclusive, certain checks made payable to Jolly's Maintenance Service were not deposited in the bank account of that business or recorded on its books, but were cashed or deposited in Jolly's personal bank account. The totals of said checks for each of said years are as follows: YearAmount1946$234.921947174.411948284.651949285.52 These checks consisted principally of checks from Southern Amusement Company for commissions on cigarette*51 machines maintained at the business address of Jolly's Maintenance Service. The checks were issued to Jolly or to the Maintenance Service on a monthly basis after collections from the machines had been made. During the taxable period 1946 to 1949, inclusive, Jolly's Maintenance Service also received income from a Coca Cola machine based on deliveries of Coca Cola to the business address at 300 Court Street. None of the income from these cigarette and Coca Cola machines was reported by Jolly on his tax returns. Brown Distributing Company, a subsidiary of Jolly's Maintenance Service, was organized to facilitate the purchase of paints, lacquers, and body finishes used in repairing automobiles. It was organized as an individual proprietorship owned by Jolly. The books and records of Brown Distributing Company disclosed that the business had income of $3,215.94 in 1949. The books of Brown Distributing Company were not made available to the accountant who prepared petitioners' tax returns, and the net income of the company was not reported on petitioners' tax returns for 1949. During the years 1946 to 1948, inclusive, Jolly received payments of rent on real estate from the following*52 persons or companies and in the following amounts: Rent194619471948Corbitt Motor Company$ 300.00$ 150.000Strait-Jackson210.90225.000Mrs. Evelyn West650.00550.00$ 150.00Zahner - Memphis00250.00James M. Campbell, Rental Agent3,410.553,657.502,660.00During the years 1946 and 1947 petitioner Jolly owned rental property located at 215 Union Avenue in Memphis. On his income tax return for 1946 Jolly claimed a deduction for repairs to this property in the amount of $1,107.75. No records were available to indicate the specific nature of the repairs or the exact amount expended for the repairs. On his returns for 1947 and 1948, Jolly claimed a capital expenditure of $1,496.67 on the property for a new roof with an estimated useful life of 15 years. He deducted depreciation on the roof for both 1947 and 1948. No records were available to indicate the specific nature of the expenditure or its exact cost. During the years 1946 to 1949, inclusive, dividends were paid to Jolly by the following organizations in the following amounts: Dividends1946194719481949The Reese Corporation$24.00$12.00$22.00$18.00Provident Loan & Discount Corporation4.004.004.004.00*53 On May 31, 1946, Cab Company declared a dividend of $22,280 on its outstanding common and preferred stock. $17,660 of this amount was credited to Jolly's personal drawing account. The remaining $4,620 was credited to a "dividends payable" account which did not indicate the individuals to whom this amount was payable. An audit report of Cab Company books and records dated May 31, 1946, stated: "The item of $4,620 shown as Dividends Payable represents dividends remaining unpaid on May 31, 1946, as follows: "Berenice J. Jolly$1,540.00David L. Jolly, Jr.1,540.00William C. Jolly1,540.00$4,620.00"The above constitutes the remaining unpaid Common Stock dividend payments of $22.00 per share accruing to stockholders of record on May 28, 1946." The net income of Cab Company after Federal income taxes for the year ended May 31, 1946, was $37,994.91. Berenice, Dave and William each reported $1,540 as dividend income on their individual tax returns for 1946. On May 31, 1948, the amount of $4,620 was transferred to the notes payable account of Cab Company and credited. The notes payable account of Cab Company reflects the following penciled notation: "Dividends4,620.005,000.00Mr. Jolly29,000.00Mrs. Jolly"*54 On December 2, 1948, a check for $4,000 in dividends was issued by Tri-State, payable to Dave. The check was endorsed by Dave to Dry Cleaning for deposit only. Dry Cleaning deposited the check and credited a notes payable account in the name of petitioner Jolly. Subsequently, the $4,000 notes payable item was paid to Jolly. $1,000 in 1949 and $2,667 in 1950, representing $3,667 of the $4,000, was deposited to Jolly's personal bank account at the National Bank of Commerce. The remaining $333 of the $4,000 was used to issue stock of Dry Cleaning, the stub of which was signed by Jolly. During 1949 Tri-State issued to Dave dividend checks totaling $6,048.60. Two of these checks, in the amounts of $1,798.55 and $2,000, were endorsed by Jolly as Trustee for Dave. The third check, in the amount of $2,250.05, was endorsed by Dave. Although all three of the checks are stamped "For deposit only - pay to the order of" Leader Federal, none of the accounts maintained by Jolly or by Dave at Leader Federal reflects that any of the checks were deposited in those accounts. During the years 1946 to 1949, inclusive, the charitable contributions made by Jolly, Berenice, Cab Company, Motor Livery*55 and Jolly's Maintenance Service, as disclosed by the records of the named organizations, are as follows: Organization1946194719481949YMCA$2,000.00Red Cross$ 300.00250.00$ 300.00Southwestern U.2,500.00Boy Scouts154.31Goodfellows$ 100.00YWCA125.00Community Chest750.001,000.001,000.00 Of the amount contributed to the YMCA in 1947, $1,000 was paid by Motor Livery and charged to the "donations account" of that company. The other $1,000 was paid by Jolly, by check drawn on the bank account of Jolly's Maintenance Service Of the amounts contributed to the Red Cross, $300 was paid by Cab Company in 1946 and charged to the "contributions account" of the company; $250 was paid by Motor Livery in 1947 and charged to contributions for that year; and $300 was paid by Motor Livery in 1948 and charged to the "contributions account." The $2,500 contributed to Southwestern University in 1946 was paid by Cab Company and charged to its "contributions account." The $154.31 contributed to the Boy Scouts in 1948 was paid by Motor Livery for a canoe and was charged to advertising expenses. The $100 contribution to Goodfellows*56 in 1949 was also paid by Motor Livery and charged as a donation on its books. The $125 donated to the YWCA was paid by Cab Company, and the $750 contribution to the Community Chest in 1947 was made by Cab Company. The $1,000 donations in 1948 and 1949 to the Community Chest were made by Motor Livery. The contributions made by Cab Company and Motor Livery were claimed as deductions by these corporations and went into the computation of net income appearing on their corporate income tax returns for the applicable years. The charitable contributions claimed by petitioner Jolly on his tax returns for 1946 and 1947 and by petitioners Jolly and Berenice on their joint returns for 1948 and 1949 were as follows: Organization1946194719481949YMCA$ 250.00$1,000.00$1,000.00$1,000.00Red Cross350.00500.00500.00500.00Southwestern University750.001,000.001,000.001,000.00Gailor Hall500.00500.00500.00Highland Hts. Presbyterian Church1,050.001,500.001,500.001,500.00Boy Scouts200.00350.00350.00350.00Girl Scouts250.00250.00250.00250.00Goodfellows350.00500.00500.00500.00YWCA250.00250.00250.00250.00Methodist Church, Donephan, Mo.250.00250.00250.00250.00Community Fund (Chest)500.00500.00500.00500.00Memphis Union Mission500.00500.00500.00Salvation Army300.00300.00500.00Grimes Memorial M. E. Church50.00Miscellaneous47.31*57 Petitioners overstated their charitable contributions for each of the years 1946 to 1949, inclusive, by the following amounts: $4,200 in 1946; $5,200 in 1947; $6,650 in 1948; and $4,848.04 in 1949. In 1946, 1947, 1948 and 1949, Jolly received director's fees from Leader Federal in the amounts of $470, $420, $430, and $690, respectively. On the individual returns filed by petitioner for 1946 and 1947 and on the joint return filed by Jolly and Berenice for 1948, petitioners reported income from "commissions" in the following amounts: $1,500, $2,000 and $2,775. The "commissions" were listed under the salaries and wages schedule of each return. The source of the "commissions" is not explained on the returns, and the accountant who made up the returns was not given any explanation as to what items of income the "commissions" represented. Commencing in the 1920's and continuing throughout 1949, Clarence Quinn, of the accounting firm of Bolin, Quinn and Ivy, was responsible for preparing the income tax returns for Jolly, the members of his family, Cab Company, and Motor Livery. In preparing the individual returns, Quinn relied primarily on information furnished him by Jolly, audit*58 reports for Jolly's Maintenance Service, and prior information returns. Jolly submitted handwritten sheets to Quinn upon which were listed income items and deductions. Normally, no checks, invoices or other information were given to Quinn to support the items listed on the handwritten sheets. The separate or joint returns, Forms 1040, filed by Jolly for the years 1946 to 1949, inclusive, reflect the following total gross receipts and gross income: 1946194719481949Gross Receipts$378,398.66$407,523.03$403,401.40$320,900.07Gross Income135,874.08123,638.21107,722.1481,261.16The separate income tax returns, Forms 1040, filed by Berenice for the years 1946 and 1947 reported the following: 19461947Salaries, Jolly Cab Company$2,400.00$2,400.00Dividends, Jolly Cab Com-pany1,540.00Interest, Leader FederalSavings and Loan Associa-tion329.08201.92Long-term capital gain (saleof residence)2,414.45On the returns filed by petitioner Jolly for 1947 and the joint returns filed by him and Berenice for 1948 and 1949 an exemption for Jolly's stepmother was claimed. The income tax returns*59 filed by petitioner Jolly for 1946 and 1947 and by Jolly and Berenice for 1948 and 1949 reflect the following amounts of net income: 1946$66,831.34194750,004.03194841,251.69194930,903.62The specific items forming the basis for the respondent's determination of certain classifications of additional income and the totals for the taxable years 1946 to 1949, inclusive, are as follows: Docket No. 41269 - 1946Informal Dividends: Checks deposited in acct. of D. L.Jolly, Sr., at National Bank ofCommerce: Identified as payable to JollyCab Co.$ 5,512.80Identified as payable to JollyMotor Livery Corp.669.67Unidentified as to payee 1-1-46to 3-31-46, allocated to JollyCab Co.735.94Unidentified as to payee 4-1-46to 12-31-46, allocated to JollyCab Co.$ 1,959.21Unidentified as to payee 4-1-46to 12-31-46, allocated to JollyMotor Livery Corp.345.74Federal Insurance Company checkpayable to Jolly Cab Co. 10-31-46- not deposited110.19Check payable to Jolly's MotorLivery Co. deposited to WilliamC. Jolly's account at Leader Fed-eral4.99Coca-cola income - net, Jolly CabCo.134.40Portion of rent paid on Lot 150 S.Third Street disallowed as ex-pense of Jolly Cab Co.4,800.00Disallowed salary paid by JollyCab Co. to Berenice Jolly2,400.00Disallowed salary paid by JollyCab Co. to Dave Jolly, Jr.2,600.00Travel expense disallowed as ex-pense of Jolly Cab Co.940.76$20,243.70Proprietorship Income: Checks payable to Jolly Mainte-nance Service: Iskiwitz & Co.$ 46.66Mrs. W. E. Williams4.82Mrs. W. E. Williams16.00Yellow Cab & Transfer Co.,Houston133.25Southern Amusement Co. - ciga-rettes39.01Net proceeds - Coca-Cola sales384.00Four checks paid to D. L. Jolly byJolly Maint. Service253.83$ 877.57Rent: Corbitt Motor Co.$ 300.00Strait-Jackson210.90Mrs. Evelyn West650.003 years insurance premium on 215Union withheld by James M.Campbell, Agent269.45January or February 1946 rentomitted$ 142.50Repairs disallowed1,107.75Interest allowed(632.65)Insurance allowed( 7.49)$ 2,040.46Interest Received: Industrial Finance & Thrift$ 240.00Memphis Mortgage Investment Co.3.00Union Planters Nat'l Bank - sav-ings account11.68Leader Federal Savings & LoanAssn.: #3430 account in name of D. L.Jolly24.79#1762 account in name of D. L.Jolly, Trustee for BereniceJolly490.67#10874 account in name of D. L.Jolly, Jr. by D. L. Jolly, Sr.,Trustee474.57#10875 account in name of Wil-liam C. Jolly by D. L. Jolly,Sr., Trustee191.51Alec Pinstein note152.79$ 1,589.01Other Income: Total currency disposition$ 8,265.15Total currency available fromknown sources5,963.59$ 2,301.56Capital Gains: Long-term capital gain on sale ofGill Realty Co.$ 716.00Docket No. 41269 - 1947Informal Dividends: Checks deposited in account ofD. L. Jolly at National Bank ofCommerce: Identified as payable to JollyCab Co.$13,212.37Identified as payable to JollyMotor Livery Corp.3,630.82Unidentified as to payee, allo-cated to Jolly Cab Co.1,289.19Unidentified as to payee, allo-cated to Jolly Motor Livery227.51Check deposited in account of JollyCab Co. 10-9-47 and credited toNotes Payable, D. L. Jolly3,381.75Coca-Cola income - net Jolly CabCo.284.84Portion of rent paid on Lot 150,S. Third St., disallowed as ex-pense of Jolly Cab Co.800.00Disallowed salary paid by JollyCab Co. to Berenice Jolly2,400.00Disallowed salary paid by JollyCab Co. to Dave Jolly, Jr.2,650.00Travel expense disallowed as ex-pense of Jolly Cab Co.432.53Travel expense disallowed as ex-pense of Jolly Motor Livery542.17Salary paid Dave Jolly, Jr., byTri-State Trade School, Inc.800.00$29,651.18Proprietorship Income: Southern Amusement Co.$ 174.41Net proceeds - Coca-Colasales $696.72Less depr. on dispenser( $608 X 5/12) 25.33671.39Advertising expense disallowed1,316.61$ 2,162.41Rent: Corbitt Motor Co.$ 150.00Strait-Jackson225.00Mrs. Evelyn West550.00Rent omitted157.50Interest allowed(27.84)Insurance allowed(89.82)Depreciation disallowed (roof)50.00Rental commission disallowed175.00$ 1,189.84Interest Received: Industrial Finance & Thrift$ 240.00Memphis Mortgage Investment Co.30.00Union Planters Nat'l Bank - sav-ings account11.79Leader Federal Savings & LoanAssn.: #1762 account in name of D. L.Jolly, Trustee for BereniceJolly201.92#10874 account in name of D. L.Jolly, Jr., by D. L. Jolly, Sr.,Trustee459.14#10875 account in name of Wil-liam C. Jolly, by D. L. Jolly,Sr., Trustee117.24Alec Pinstein note138.75U.S. Series F bonds360.00$ 1,558.84Other Income: Total currency disposition$12,659.21Total currency available fromknown sources6,532.90$ 6,126.31Check deposited 6-9-47, Leader Fed-eral acct. of D. L. Jolly1,944.08$ 8,070.39Docket No. 41270 - 1948Informal Dividends: Checks deposited in account ofD. L. Jolly at Nat'l Bank ofCommerce: Identified as payable to JollyCab Co.$18,177.83Identified as payable to JollyMotor Livery3,315.27Unidentified as to payee, allo-cated to Jolly Cab Co.650.17Unidentified as to payee, allo-cated to Jolly Motor Livery114.73Check payable to Jolly Cab Co.not deposited57.352 checks payable to Jolly MotorLivery and currency in theamount of $525.00 not deposited683.33Checks payable to Jolly MotorLivery deposited Leader Federal,William C. Jolly account$ 181.24Coca-Cola income - Jolly Cab Co.329.34Coca-Cola income - Jolly MotorLivery12.92Disallowed salary paid by JollyCab Co. to Berenice Jolly2,400.00Disallowed salary paid by JollyCab Co. to Dave Jolly, Jr.2,600.00Travel expense disallowed as ex-pense of Jolly Cab Co.971.93Travel expense disallowed as ex-pense of Jolly Motor Livery668.34Disallowed salary paid by Tri-State Trade School to Dave Jolly,Jr.5,850.00Disallowed salary paid by Mem-phis Dry Cleaning Institute toDave Jolly, Jr.400.00Insurance disallowed as expense ofTri-State Trade School65.78$36,488.28Proprietorship Income: Checks payable to Jolly Mainte-nance Service: National Mortuary Co.$ 37.50Southern Amusement Co.247.15Net Proceeds - Coca-Cola sales1,021.44Less depr. on dispenser(60.80)$ 1,245.29Rent: Mrs. Evelyn West$ 150.00Zahner - Memphis250.00Insurance allowed(77.83)Depr. disallowed (roof)66.66City R.E. taxes disallowed77.25S & C taxes allowed(72.01)$ 394.07Interest Received: Industrial Finance & Thrift$ 240.00Memphis Mortgage Investment Co.15.00Union Planters Nat'l Bank - sav-ings account11.91Leader Federal Savings & LoanAssn.: #1762 acct. in name of D. L.Jolly, Trustee for BereniceJolly17.68#10874 acct. in name of D. L.Jolly, Jr., by D. L. Jolly, Sr.,Trustee45.44#4375 acct. in name of BereniceJolly228.67#10875 acct. in name of WilliamC. Jolly by D. L. Jolly, Sr.,Trustee20.54Alec Pinstein note104.34Jolly's Motor Livery Corp. notespayable to Dave Jolly, Jr., andWilliam C. Jolly946.19Jolly Cab Co. note payable tobearer853.00$ 2,482.77Dividends from Stocks: Reese Corp.$ 22.00Provident Loan & Discount4.00Jolly Cab Co. dividend declaredto D. L. Jolly's wife and sons in1946 and credited on books asdividends payable4,620.00Tri-State Trade School, Inc., divi-dends paid to Dave Jolly, Jr.4,000.00$ 8,646.00Other Income: Total currency dispositions$13,634.25Total currency available fromknown sources13,083.04Additional income$ 551.214-23-48 C. B. Johnston Co.25.003-8-48 Skipper Johnson45.79$ 622.00Capital Gains: Additional gain on sale of 215Union Avenue$ 748.51Docket No. 41270 - 1949Informal Dividends: Checks deposited in account ofD. L. Jolly at National Bank ofCommerce: Identified as payable to JollyCab Co.$ 6,749.95Identified as payable to JollyMotor Livery586.12Unidentified as to payee, allo-cated to Jolly Cab Co.1,764.79Unidentified as to payee, allo-cated to Jolly Motor Livery311.43Check payable to Jolly MotorLivery deposited Leader Federal199.37Check payable to Jolly Cab Co. de-posited Leader Federal1,492.64Checks payable to Jolly Cab Co.not deposited498.80Currency paid to Jolly MotorLivery not deposited1,385.00Coca-Cola income - Jolly Cab Com-pany226.86Coca-Cola income - Jolly MotorLivery98.04Disallowed salary paid by JollyCab Co. to Berenice Jolly2,400.00Disallowed salary paid by JollyCab Co. to Dave Jolly, Jr.2,600.00Disallowed salary paid by Tri-State Trade School to DaveJolly, Jr.4,800.00Disallowed salary paid by MemphisDry Cleaning Institute to DaveJolly, Jr.2,300.00Travel expense disallowed as ex-pense of Jolly Cab Co.168.38Travel expense disallowed as ex-pense of Jolly Motor Livery792.80Amt. of rent disallowed as expenseof Tri-State Trade School200.00Common stock and check issued toD. L. Jolly, Jr., by Tri-StateTrade School in payment forequipment$ 5,524.63Less distribution of capital - Mem-phis Dry Cleaning Inst.(1,366.94)$30,731.87Proprietorship Income: Checks payable to Jolly Mainte-nance Service: Memorial Studio37.50Meyer Sales Co.5.01Meyer Sales Co.4.21Southern Amusement Co.248.02Net proceeds - Coca Cola sales652.84Less depreciation on dispenser(60.80)Brown Distributing Co. - net2,508.74$ 3,395.52Interest Received: Industrial Finance & Thrift$ 240.00Union Planters Nat'l Bank - sav-ings account12.03Leader Federal Savings & Loan As-sociation: #1762 acct. in name of D. L.Jolly, Trustee for BereniceJolly67.63#4375 acct. in name of BereniceJolly316.23#10874 acct. in name of D. L.Jolly, Jr., by D. L. Jolly, Sr.,Trustee316.08#10875 acct. in name of WilliamC. Jolly by D. L. Jolly, Sr.,Trustee229.78Jolly's Motor Livery Corp. notespayable to Dave Jolly, Jr., andWilliam C. Jolly2,454.34Jolly Cab Co. notes payable tobearer1,576.80$ 5,212.89Dividends from Stocks: Reese Corp.$ 18.00Provident Loan & Discount4.00Tri-State Trade School, Inc., divi-dends paid to Dave Jolly, Jr.6,048.60$ 6,070.60Other Income: Total currency dispositions$16,950.60Total currency available fromknown sources16,367.24$ 583.36Capital Gains: Additional long-term gain on saleof residence$ 1,951.80Short-term gain on Memphis DryCleaning Inst. stock1,033.94$ 2,985.74*60 The investigation of the income tax returns of petitioner Jolly began in January 1951. During the investigation the books and records of Jolly Maintenance Service were never made available to respondent's agents. The agents had access to the general records of Cab Company and Motor Livery, including the general ledger, voucher register, and cash disbursements journal. When respondent's agents attempted to interview Jolly concerning certain aspects of the investigation they were told to deal with Jolly's attorney. In order to question certain of Jolly's employees it was necessary for the agent to get a court order. Some of Jolly's personal records were made available to the agents, including nine settlement sheets concerning the sale and purchase of real estate, cancelled checks and bank statements on the National Bank of Commerce accounts and certain miscellaneous memoranda. Requests for information as to the number of bank accounts maintained by Jolly, repairs to property located at 215 South Union Street, and details of the alleged support furnished to the stepmother were never complied with. On July 15, 1954, petitioner Jolly was convicted by a Federal Jury, after his plea of*61 not guilty, on four counts of income tax evasion involving the years 1946 to 1949, inclusive. He was sentenced to a total period of imprisonment of ten years and fined $10,000 on each of the four counts for a total fine of $40,000. The conviction and sentence were affirmed. Jolly v. United States (C.A. 6, 1956) 229 Fed. (2d) 180. The notice of deficiency to Motor Livery was mailed on June 14, 1951, and the notice of deficiency to Cab Company was mailed on June 28, 1951. The notices of deficiency to Jolly and his wife were mailed on March 7, 1952. At least a part of the deficiency in the income tax liability of each of the petitioners in each of the taxable years was due to fraud with intent to evade tax. The tax returns filed by all petitioners for all the taxable years were false or fraudulent with intent to evade tax. Petitioner Jolly substantially underestimated his estimated tax for the year 1957. Petitioners Jolly and Berenice substantially underestimated their estimated tax for each of the years 1948 and 1949. Opinion Many of the specific items forming the basis for the respondent's determination of additional income to the individual petitioners*62 have been stipulated. No evidence has been presented and no argument on brief has been made by petitioners with respect to adjustments made to the income of the corporate petitioners and to the excess profits income of Cab Company, except to the extent that these issues are connected with the issues involving the individual petitioners Jolly and his wife Berenice. Consequently, discussion is limited to those issues which are still in dispute. Informal Dividends 1. Checks Diverted from the Corporate Petitioners to Jolly. Respondent determined that the reported income of the individual petitioners Jolly and his wife Berenice and of the corporate petitioners Motor Livery, and Cab Company should be increased by the amounts of certain checks representing income of the corporate petitioners which were diverted to Jolly and were never reported as income on either the corporation returns of the companies or on Jolly's individual returns. Respondent's position is that these funds represent income to the corporate petitioners and informal dividends to petitioner Jolly. The evidence is conclusive that certain checks made payable to Cab Company or Motor Livery were not recorded on the*63 books and records of either of the corporations and were not deposited in bank accounts maintained by the corporations. These checks were deposited either in Jolly's personal bank account or in accounts he maintained and controlled in the names of his wife and two sons. The sources of these checks have been set out in the findings, and it is clear from the record that these checks represented income to the corporations which should have been recorded on their books, but which was diverted into Jolly's hands. These checks were not reported on the tax returns of the corporations and were not listed on the tax returns of petitioner Jolly for any of the years 1946 to 1949, inclusive. Other than Jolly's selfserving statements, petitioners have offered no evidence to rebut respondent's determination that these checks represented income to the corporate petitioners and constructive dividends to petitioner. We therefore hold that the checks diverted from the books of the corporation are taxable as income to the corporations and are taxable as dividends to petitioner Jolly. United Mercantile Agencies, Inc., 23 T.C. 1105, modified and remanded on other grounds (C.A. 6, 1956) *64 238 Fed. (2d) 735 225 Fed. (2d) 674, certiorari denied 350 U.S. 995; Dawkins v. Commissioner (C.A. 8, 1956), 238 Fed. (2d) 174. Petitioners' contentions with respect to the "intercepted" checks are without merit. Jolly's testimony that he did not claim these checks as his own is inherently incredible in view of his conviction of tax evasion and the testimony of his former employees that these checks were diverted from the corporate books into his hands at his command. The checks were deposited by him in his own accounts or in bank accounts controlled by him. There is no evidence whatever that the checks were loans from the corporations to Jolly. No evidence of indebtedness appears at any point in the record and petitioners have not shown that the corporations themselves treated these sums as loans. Furthermore, respondent's allocation of checks unidentified as to payee between the two corporations was not arbitrary, as petitioners claim. Respondent's agent testified that these unidentified checks came from similar sources as the checks which were identified and that he did not take into consideration checks which did not appear to be income*65 of the type which was diverted from the two corporations. Petitioners offered no evidence to show that any of these checks were not income to the corporations and informal dividends to Jolly. 2. Income from Sale of Coca Cola. Respondent further determined that net proceeds from the sale of Coca Cola from machines located at the business addresses of Cab Company and Motor Livery represented income to the corporate petitioners and informal dividends to petitioner Jolly. Respondent computed net income from Coca Cola sales upon the basis of a cost of eighty cents per case, a selling price of five cents per bottle, or $1.20 a case, and the number of cases delivered to each address. Respondent's agent testified that this information was obtained from the records of the Coca Cola Company of Memphis which furnished respondent's agent with the number of cases delivered to the business addresses of the companies. He further testified that the cost per case was increased to allow for a state sales tax which went into effect on June 1, 1947. The income from sales of Coca Cola from these machines was not recorded on the books of either corporation but was turned over to Jolly. Petitioners' *66 claim that the method of determining income from sales of Coca Cola was arbitrary is without merit. Respondent's agent used a clearly reasonable computation based on cost, sales price and number of units purchased. Petitioners have offered no evidence that an allowance for breakage should have been made and have failed to prove that an adjustment should have been made for Coca Colas allegedly taken home by employees who did not pay for them. Certain testimony in the record suggests that employees took Coca Colas home without paying for them, but the testimony of other witnesses is contradictory. This is not sufficient evidence to overcome the presumptive correctness of respondent's determination that the net proceeds from the sale of Coca Cola from machines located at the business addresses of Cab Company and Motor Livery, which amounts were turned over to petitioner Jolly and were not recorded on the books of the companies, were income to the corporate petitioners and informal dividends to Jolly. 3. Rent from Lot at 150 South Third Street. In 1944, while Dave was with the Army in Italy, Jolly purchased in Dave's name a lot located at 150 South Third Street, Memphis, Tennessee. *67 This lot was rented to Cab Company from the time of purchase until January 1, 1947, for $500 per month. On January 1, 1947, the lot was leased to Parkrite Parring System for $100 per month. Out of the $6,000 rental paid in 1946 by Cab Company for use of the lot, respondent allowed the sum of $100 per month, or a total of $1,200, as a deduction for reasonable rental. Respondent determined that $4,800 of the total rent paid in 1946 was not allowable as a deduction by Cab Company and that this amount represented an informal dividend to Jolly. Petitioners do not contest respondent's determination that the payment in 1946 of $6,000 rent by Cab Company for the use of property purchased for $7,000 was unreasonable and that $1,200 represented a proper rental for that year. It is obvious from the lease entered into with Parkrite Parking System, which set a rental value of $100 per month on the property, that the rental arrangement devised by Jolly and Cab Company furnished Cab Company with an excessive deduction. Respondent correctly disallowed as a rental deduction the sum of $4,800. Herbert Davis, 26 T.C. 49. We also think that respondent correctly taxed the $4,800 to Jolly*68 as an informal dividend. Jolly purchased the rental property while his son Dave was out of the country by obtaining a loan in Dave's name. He was responsible for the excessive rental arrangement between the nominal owner of the property, his son, and Cab Company, of which he was the controlling stockholder. Moreover, all of the rental payments made by Cab Company in 1946 were deposited in the trustee account at Leader Federal in the name of D. L. Jolly, Jr., by D. L. Jolly, Sr., Trustee. It thus appears that the entire transaction was merely a convenient method devised by Jolly for splitting his income by channeling earnings of Cab Company in the form of excess rental payments in such a manner that Dave could claim them and report them as his for income tax purposes. Even assuming that Dave acquired legal title to the rental property, the excess rental payments are nevertheless taxable to Jolly. Taxation is not so much concerned with the refinements of title as it is with the actual benefit for which the tax is paid. Corliss v. Bowers, 281 U.S. 376. And the enjoyment of income which results in the realization of taxable income by assignor may take the form of a gift*69 to the donor's favorite son. Helvering v. Horst, 311 U.S. 112. Jolly benefited from this transaction because funds of Cab Company which would normally have been taxed to him, the controlling stockholder, as dividends were paid directly to Dave in the form of rents. Jolly thus escaped the payment of tax on the $4,800 and at the same time effected a gift of income to his elder son. Despite attempts at concealment, it is clear that the $4,800 excessive rent paid by Cab Company in 1946 was in fact a dividend distribution to petitioner Jolly. See Helvering v. Horst, supra. Petitioners point to respondent's failure to tax the entire $6,000 rent to Jolly to bolster their claim that none of the rental payments represented income to him. This argument, however, ignores the crucial fact that the lease arrangement between Jolly and Cab Company was not arrived at by arm's length negotiations. Jolly arranged for the purchase of the rental property while Dave was in Italy and as controlling stockholder of Cab Company, he was at liberty to set whatever rental he wished. Assuming again that Dave was the legal owner of the property, he nevertheless was only entitled*70 to the income which that property would produce. The 1947 lease with Parkrite clearly reveals that the property would produce a reasonable rental of $1,200 per year, and Dave was therefore entitled to claim this amount as his own income. There is no evidence that the additional $4,800 rent in 1946 was the result of any increased value in the rental property. It was the result of a sham transaction set up by Jolly to effect a gift of income to his son. We therefore cannot infer from respondent's failure to tax the entire $6,000 rent to Jolly that the 1946 lease arrangement with Cab Company was in all respects a bona fide transaction. 4. Salary Payments to Berenice and Dave. Respondent has disallowed as deductions salary payments made by Cab Company to Berenice and Dave. Respondent has treated these payments, together with salary payments to Dave from Tri-State and Dry Cleaning, as informal dividends to Jolly. Petitioners contend that Berenice and Dave performed substantial services which justified the salaries and that no part of any of the salary payments should be taxed to petitioner Jolly. Because Tri-State and Dry Cleaning are not petitioners in this proceeding, it is unnecessary*71 to determine whether the salaries paid by these corporations to Dave were reasonable and therefore deductible by these companies as ordinary and necessary business expenses. However, it is necessary to determine whether all salary payments represent dividend distributions to Jolly. Extravagant amounts paid by a corporation in the form of compensation, but having no substantial relation to the measure of the services rendered and being disproportionate to their value, are not in reality payments for services and cannot be regarded as "ordinary and necessary" business expenses. Botany Worsted Mills v. United States, 278 U.S. 282. Here, Berenice and Dave received substantial salaries from Cab Company without performing services commensurate with the compensation. Berenice admited in her testimony that she was not a business woman, but nevertheless insisted that as secretary of Cab Company she regularly attended business meetings, signed certain business documents, and had various business duties. Her testimony is contradicted by Peyton and Wilkins, former supervisors of Jolly's*72 businesses, who did not recall that she was present at any business meetings or that she had any visible business duties. Even if she did appear at such meetings, her role was apparently that of an observer. We have found that the only services performed by Berenice were limited to Christmas shopping and wrapping packages for the cab drivers and occasionally serving refreshments at drivers' meetings. Petitioners offered no evidence to show that she performed any regular services of value to Cab Company. We therefore hold that none of the salary payments to Berenice were reasonable. Dave also had no regular duties with Cab Company. Most of his testimony with respect to his duties related to alleged services performed for Motor Livery, Tri-State, and Dry Cleaning. Apparently the only service he performed for Cab Company was some measure of assistance in making up the payroll and inserting cash in envolopes for the drivers. Even this testimony is contradicted by the bookkeeper who testified that Dave did not make up the payrolls. In any event, it is clear that his duties were so insignificant in comparison with the salary he received that the salary payments cannot be regarded as allowable*73 business expenses. We must next determine whether these excessive "salary" payments were in fact concealed distributions of earnings and profits to Jolly, the principal stockholder of Cab Company. At the outset we note that respondent erred in his determination that the $2,400 "salary" paid to Berenice in 1948 and 1949 represented additional income to Jolly. The joint tax returns of Jolly and Berenice for those years reveal that these amounts were reported for 1948 and 1949 and income tax paid thereon. The only amounts correctly in issue are the "salary" payments from Cab Company to Berenice in the years 1946 and 1947 (the years for which Berenice filed separate individual returns) and the "salary" paid to Dave in the years 1946 to 1949, inclusive. As a general rule, income is taxed to the one who earns it or otherwise creates the right to receive it. Lucas v. Earl, 281 U.S. 111; Helvering v. Horst, supra. The principle of these cases is that a taxpayer, despite an intrafamily gratuitous assignment of income rights, remains taxable on the income which he earns*74 or which is derived from property which he owns. Cotlow v. Commissioner (C.A. 2, 1955), 228 Fed. (2d) 186, affirming 22 T.C. 1019. In our view, respondent correctly determined that the alleged "salary" payments by Cab Company to Berenice and Dave were taxable to Jolly. Berenice and Dave performed no services for Cab Company which would justify the payment of compensation to them. In contrast, Jolly was the founder of the business and apparently the guiding force. His orders to his employees to divert funds of Cab Company from the company books directly to him indicate that he personally took an active part in the management of Cab Company and that he completely controlled the operation of the taxicab business. Moreover, he was the sole stockholder of Cab Company until 1945 when be began making gifts of 35 shares each to his wife and two sons. Despite these gifts, he owned the controlling common stock interest in Cab Company throughout the taxable period and he kept the certificates representing the gifts of shares to his family in his personal safe. There is no evidence that his wife and sons had any active voice in the management of Cab Company affairs. *75 The only inference to be drawn from this evidence is that Jolly, not Berenice and Dave, earned the "salary" payments made by Cab Company. The transaction by which these payments were made directly to Jolly's wife and son was obviously a sham to conceal an assignment of income from Jolly to Berenice and Dave. Whether the income is characterized as "salary" to Jolly because of his efforts in the business or as an "informal dividend" because of his controlling stock ownership is unimportant. In either event, Jolly enjoyed the benefit of the gratuitous assignment. Accordingly, the "salary" payments are properly taxable to him. Respondent's further determination that salary payments made by Tri-State and Dry Cleaning to Dave were taxable to Jolly was also correct. Testimony in the record reveals that Jolly had a reputation as an organizer in Memphis. As such, he was instrumental in setting up Tri-State and Dry Cleaning. He consulted frequently with the directors of both organizations, attended directors' meetings and furnished business advice. He permitted both Tri-State and Dry Cleaning to use his name for credit purposes. Furthermore, Jolly put up the consideration for the issuance*76 of Tri-State stock to Dave. He signed the stock certificates of both corporations for Dave and he kept the certificates in his office. In contrast, Dave had no regular duties at either corporation. Nor did he observe any regular working hours. His only services consisted of furnishing some assistance in maintaining inventory for Tri-State. Even these services were more for the purpose of observation than anything else. Dave admitted that he spent little time at Dry Cleaning and that his only services there consisted of consultation during the organizational period. From these facts, we conclude that Jolly, and not Dave, earned the salary payments made by Tri-State and Dry Cleaning to Dave. Lucas v. Earl, supra; Helvering v. Horst, supra.Clearly, the transaction was another device to effect an assignment of income from Jolly to Dave. 5. Check for $3,381.75 Deposited to Account of Jolly Cab Company. Respondent has determined that a check in the amount of $3,381.75, the source of which is unknown, was income to Cab Company and an informal dividend to Jolly. The facts show that on October 9, 1947, two checks totaling $5,000 were deposited to the account of Cab Company*77 at Union Planters Bank. One check, in the amount of $1,618.25, was drawn on Jolly's personal bank account at National Bank of Commerce. The second check, in the amount of $3,381.75, although listed on the deposit slip opposite the name "Dave Jolly," was not a withdrawal from any known bank accounts of Jolly or any member of his family. On October 31, 1947, these two checks, totaling $5,000, were credited on the notes payable account of Cab Company opposite the name "D. L. Jolly." Petitioners have submitted no evidence to show that respondent's determination was erroneous. The bookkeeper for the Cab Company did not know what the check for $3,381.75 represented or where it came from. In view of the questionable bookkeeping practices at Cab Company and in the absence of evidence to the contrary, respondent correctly treated the check as income to Cab Company. The same result follows with respect to the determination that the check also represented an informal dividend to Jolly. Both of the checks were credited to the notes payable account of Cab Company. Furthermore, notations on the notes payable account indicate that dividends of $5,000 were paid from this account to Jolly. At two*78 places on the account to Jolly. "$5,000" is writen opposite Jolly's name and at one place the word "Dividends" is written above the figure. The inference is inescapable that the two checks totaling $5,000, which included the check for $3,381.75 under consideration, reached Jolly via the notes payable account of Cab Company. Because petitioners offered no evidence to rebut this inference, we again sustain respondent's determination. 6. Sale of Equipment to Tri-State Trade School. When Tri-State was organized, it needed automobile parts and equipment for use by its students. Since Jolly Maintenance Service had stockpiled such equipment during the war, Jolly offered to sell some of this surplus to Tri-State. Because the school did not have capital available to purchase the equipment directly, an arrangement was made whereby Jolly furnished the equipment in return for promissory notes which were later exchanged for stock of Tri-State. Three appraisers set a total price of $11,049.26 on the equipment to be purchased by Tri-State. Jolly received a promissory note for $5,537.01 for half of the equipment and C. C. Humphreys received a similar promissory note for $5,512.25 which represented*79 the cost of the other half of the equipment. Humphreys later paid Jolly for his share of the equipment. The two promissory notes were canceled in 1949 after the issuance of 110 shares of Tri-State stock, 55 in Dave's name and 55 shares in Humphreys' name. During the investigation of petitioners, which included investigation of Tri-State, respondent's agent could not determine whether Tri-State did or did not purchase equipment for $11,049.26 from Jolly, as claimed by Tri-State. Accordingly, respondent's agent did not recognize any purchase and disallowed deductions claimed in connection with such a purchase. One-half of the amount of the claimed purchase, represented by 55 shares of $100 par value stock of Tri-State issued to Dave which was signed for and retained in Jolly's possession, plus a small check in the amount of $24.63 - a total amount of $5,524.63 - was treated as a distribution of earnings of Tri-State to Jolly at the time the stock and check were issued. This amount was reflected in respondent's determination of "informal dividends" to Jolly in 1949 as "Common stock and check issued to D. L. Jolly, Jr., by Tri-State Trade School in payment for equipment." However, at*80 the hearing respondent claimed that the evidence showed the purchase of equipment in July and August of 1948 by Tri-State from Jolly in the total amount of $11,049.26. After the hearing, respondent's motion for leave to conform the pleadings to the proof was granted and in an amendment to amended answer respondent claimed, as an alternative to its original determination, that the full amount of the purchase price of the equipment should be included in petitioner Jolly's income in 1948. It is clear that respondent's original determination was erroneous. Payment by a corporation to a stockholder for the fair value of property purchased from him is obviously not a dividend. Herff & Dittmar Land Co., 32 B.T.A. 349; See Mertens, Law of Federal Income Taxation, sec. 9.22. There is no contention that the purchase price of the equipment was in excess of the value of the property; indeed, the facts show that three appraisers determined the estimate of value. The price of the equipment acquired directly by Tri-State from Jolly in 1948 was $5,537.01. Jolly received a promissory note dated*81 April 15, 1949, for this amount, which note was canceled in 1949 upon the issuance of 55 shares of Tri-State stock in Dave's name. Even assuming that Jolly was the actual owner of this stock, as respondent contends, the net result of the transaction is that in 1948 Tri-State received equipment valued at $5,537.01 and that in 1949 Jolly received control of stock of that corporation of a par value of $5,500. Clearly, no informal dividend in 1949 resulted to Jolly from this transaction. Respondent's alternative argument that the entire amount of the sale is income to Jolly in 1948 is also without merit. Respondent apparently contends that the equipment came from the inventory used in the trade or business of Jolly Maintenance Service and that since the books of that proprietorship did not reflect the sale, the net income of Jolly Maintenance Service as reflected on Jolly's income tax return for 1948 was understated by the amount of the sale. However, although no record of the sale appears from the books of Jolly Maintenance Service or from Jolly's tax return for 1948, it is not clear that Jolly received income from the sale in that year. The evidence shows only that in the summer of*82 1948 Tri-State acquired the equipment at a cost of $11,049.26. In payment Tri-State gave two promissory notes. One note, in the amount of $5,537.01 was made out to Jolly and the other, in the amount of $5,512.25, was made out to C. C. Humphreys. There is no evidence that the notes were in existence during the year 1948, nor does it appear from the record that any other evidence of indebtedness was issued in that year by Tri-State. The notes themselves were dated April 15, 1949, and were not due until six months after that date. Jolly did not realize anything from the note made out to him until June 28, 1949, when the note was canceled in return for the issuance of 55 shares of Tri-State stock in Dave's name. Moreover, although Humphreys testified that he paid Jolly for the equipment for which he (Humphreys) received the other note, he further testified that Jolly did not receive this payment until the spring of 1955. Respondent has offered nothing whatever to prove that in the year 1948 Jolly received payment, or any document representing an obligation to pay, for the $11,049.26 worth of equipment purchased by Tri-State. The evidence that does appear in the record indicates that if*83 Jolly received payment for this equipment, it was received in subsequent years. Accordingly, the recomputation will not reflect additional income to Jolly in 1948 from the sale of equipment of Jolly Maintenance Service. Proprietorship Income Respondent determined that the income of the individual petitioners for the taxable years should be increased by certain amounts of proprietorship income. Respondent has conceded, however, that with respect to the year 1947 proprietorship income should be reduced by $1,316.61, the amount of an advertising expense which was erroneously disallowed. With respect to the year 1948, respondent added proprietorship income of $1,245.29 to the income of the individual petitioners. By amendment to amended answer, respondent increased this figure to $12,294.55 to include additional income of Jolly Maintenance Service in 1948 from the sale of equipment to Tri-State for $11,049.26. In view of our holding herein that the sale of equipment for $11,049.26 was not income to the individual petitioners in 1948, it is clear that respondent's attempt to increase proprietorship income by this amount was incorrect. No evidence was offered by petitioners to rebut*84 the presumptive correctness of respondent's determination. Petitioners' failure to contest the additions to proprietorship income made by respondent, together with their failure to explain why they did not report these items on their tax returns, warrants sustaining respondent's determination with respect to this issue. Rhett W. Woody, 19 T.C. 350. Rental Income Respondent determined that the income of the individual petitioners should be increased by certain amounts of rental income for each of the years 1946, 1947 and 1948. Petitioners offered no evidence with respect to these items and this determination is accordingly sustained. On his 1946 tax return petitioner Jolly claimed a deduction for repairs on rental property located at 215 Union Avenue, and on his 1947 and 1948 tax returns Jolly claimed a deduction for depreciation of a new roof allegedly constructed in 1947 at a cost of $1,496.67 with an stimated remaining life of 15 years. Jolly testified that these expenditures were made but offered no substantiating evidence of any sort. In view of the self-serving nature of Jolly's statements and the lack of supporting evidence, we hold that respondent correctly*85 disallowed the claimed deduction for repairs for 1946 and the claimed depreciation on a new roof for 1947 and 1948. Interest Income Respondent determined that interest credits by Leader Federal on the "trustee" accounts maintained by Jolly for his wife and two sons were taxable as income to Jolly. Petitioner insists that the interest income from these accounts is properly taxable to the beneficiaries of these accounts and not to Jolly, the "trustee." Because joint returns were filed by Jolly and Berenice for 1948 and 1949, interest payments on Berenice's trustee account in those years were clearly includible in the joint returns. Accordingly, the only items in issue are the interest payments on the trustee accounts in the names of Dave and William for each of the years 1946 to 1949, inclusive, and interest payments on the trustee account in Berenice's name for 1946 and 1947. With respect to the accounts maintained by Jolly for Dave and William, we think that respondent's determination was incorrect. These accounts were opened on January 10, 1940, when Dave was sixteen and William was seven years of age. The accounts were opened in the respective names of the sons with Jolly named*86 as "trustee" of the accounts. Jolly made regular deposits in the accounts. Although the accounts did not arise as a result of formal trust agreements, the evidence is clear that these funds were kept segregated from Jolly's own personal account. Jolly alone controlled the management of these accounts, but this control was reasonably consistent with his role as father and natural guardian of his sons. There is no evidence whatever that Jolly withdrew any of these funds for his own personal use. Finally, we note that on November 3, 1949, these two accounts were closed out and the balances were transferred to two new accounts, one in Dave's name and one in William's name with Dave as trustee, over which Jolly had no control. After careful consideration of these and other facts, we have concluded that the funds in the trustee accounts at Leader Federal which were maintained by Jolly for Dave and William were given to the sons and that the income from these accounts was not taxable to Jolly. In Edward H. Heller, 41 B.T.A. 1020, a father set up bank accounts of cash and securities for his children. The accounts were opened in the name of the father as "trustee" for the named*87 children. No formal declarations of trust with respect to these accounts were executed. The father maintained complete control over the accounts and managed the funds contained in them. After considering respondent's claim that the income from these accounts was taxable to the father, we held that the father, by using the descriptive term "trustee" and by separating the funds from his own, demonstrated intent to segregate the funds for the child particularly named in the accounts and that he made present gifts of the funds in the accounts to his children. We recognize, of course, that a father may maintain such absolute control over property allegedly given to his children that the gift may be termed a sham. See Richardson v. Smith (C.A. 2, 1939), 102 Fed. (2d) 697. Such is not the situation here. Before the end of 1949, Jolly turned over the balances in the trust accounts to Dave, and relinquished all control. This circumstance alone is persuasive proof that Jolly had made gifts of the accounts which he managed for his sons. It is true that during the existence of the accounts Jolly made five withdrawals, two from the account in Dave's name and three from William's*88 account. But the only evidence of record relating to these withdrawals establishes that a withdrawal of $24,000 from Dave's account and a withdrawal of $7,500 from William's account were loaned to Motor Livery in return for two promissory notes, payable on demand to Dave and William, respectively, with interest at six per cent. These notes were secured by a deed of trust on certain property. Nothing appears to indicate that Jolly gained personally from this transaction or that the use of these funds for investment in Motor Livery was other than a bona fide business transaction for the benefit of the sons. Nor does it appear that Jolly used any of the withdrawn funds for his own purposes or to support and maintain the sons. Thus, Jolly's management and control of the trust accounts was not inconsistent with our holding that the funds in the trust accounts belonged to the sons. See Emil Frank, 27 B.T.A. 1158; Elsie SoRelle, 22 T.C. 459. We do not think, however, that Jolly made a valid gift of the trustee account maintained in Berenice's name. Although the measure of Jolly's control over this account was the same as that he exercised over the sons' accounts, *89 these management powers are not consistent with a donordonee relationship between husband and wife. The fact that Jolly alone had access to Berenice's trust account, that he alone made the deposits and withdrawals, and that there was no evidence of delivery of any sort cannot be justified, as in the case of the sons' accounts, on the ground that Jolly was the natural guardian. Moreover, there was no manifestation of an intent on Jolly's part that Berenice would ever own the funds contained in her trust account. Jolly opened the trust account in Berenice's name on December 30, 1941, and the account was still open on January 18, 1954. Yet, beginning on December 2, 1946, Berenice maintained a savings account at Leader Federal in her own name. This account was likewise still open on January 18, 1954. Since there was never any transfer of funds from the trust account to Berenice's personal savings account and no evidence that the "trust" funds would ever be turned over to Berenice, the inference is compelled that Jolly never intended to part with dominion over the funds in the trust account. Richardson v. Smith, supra.Respondent's determination that income from the trustee*90 account in Berenice's name was income to Jolly in 1946 and 1947 was therefore correct. Respondent erred in determining that interest payments on the notes issued to Dave and William on April 1, 1948, represented income to Jolly. These notes were issued in return for funds loaned to Motor Livery from the sons' trustee accounts. The notes were payable on demand and bore an excellent rate of interest, six per cent. Both notes were solidly secured by a deed of trust on certain real estate. The monthly interest payments were deposited in the trustee accounts in the names of Dave and William. The entire transaction was a sound investment for the boys and their rights were fully protected. As owners of the funds from which the loans to Motor Livery were made, Dave and William, not Jolly, were entitled to the interest payments on the promissory notes for Motor Livery. With respect to the taxability of interest on a secured note from Jolly Cab Company kept by Berenice in her safe deposit box, petitioners point out that the interest was accrued on the Cab Company books and was not actually paid to Berenice. However, the interest payments were unqualifiedly credited to an amortization account*91 in Berenice's name. Petitioners have not shown that Cab Company could not have paid these interest credits on demand. Under these circumstances, Berenice constructively received the interest payments as they accrued. Albert J. Sullivan, 16 B.T.A. 1347. Respondent correctly treated the interest credits as income to Jolly and Berenice in 1948 and 1949. Dividend Income The parties have stipulated that Jolly made transfers of ownership of 35 shares of Cab Company common stock each to Berenice, Dave and William on each of the following dates: December 1, 1945; February 1, 1946; December 20, 1947; December 22, 1948; and December 26, 1949. On May 31, 1946, Cab Company declared a dividend of $22,280 on its outstanding common and preferred stock. $17,660 of this amount was credited to Jolly's personal drawing account. The remaining $4,620 was credited to a "dividends payable" account which did not indicate the individuals to whom the dividend was payable. However, an audit report of Cab Company for the fiscal year ended May 31, 1948, revealed that the $4,620 was payable as follows: Berenice$1,540Dave1,540William1,540$4,620 This amount constituted*92 the remaining unpaid common stock dividend payments of $22 per share accruing to stockholders of record on May 28, 1946. Berenice, Dave and William each reported $1,540 as dividend income on individual 1946 tax returns. The net income of Cab Company after Federal income taxes for the year ended May 31, 1946, was $37,994.91. Because of these facts, petitioners insist that Jolly could not have realized taxable income in the amount of $4,620 from dividends on stock of Cab Company owned by Berenice, Dave and William. Respondent treated the $4,620 as a dividend payment to Jolly in 1948 and argues that this determination was correct. Preliminarily, we note that Jolly made valid gifts of Cab Company stock to Berenice, Dave and William prior to the declaration of the dividend. Respondent has stipulated that such transfers were made and makes no argument to the contrary. It therefore appears that on May 31, 1946, the date of the declaration of the dividend, Berenice, Dave and William owned 70 shares each of Cab Company common stock, and that the sum of $1,540 payable to each represented the unpaid dividend of $22 per share, as the audit report stated. Cab Company had ample earnings with*93 which to pay the dividend. However, the dividends payable were never paid to Berenice, Dave and William. From the meager facts available, we have found that on May 31, 1948, the sum of $4,620 was credited to the "Notes Payable" account of Cab Company. No names appear on the account to indicate to whom this sum was payable. However, a penciled notation on the account ledger reflects under the word "Dividends" the amount "$4620.00 Mr. Jolly." The taxability of a dividend to a stockholder is determined as of the date of payment, not as of the date the dividend is declared. Mason v. Routzahn, 275 U.S. 175; Emily D. Proctor, 11 B.T.A. 235. However, a stockholder may not postpone his tax by leaving his dividend with his corporation. A. D. Saenger, Inc. v. Commissioner (C.A. 5, 1936), 84 Fed. (2d) 23, certiorari denied 299 U.S. 577. Where declared dividends remain unpaid on the books of a corporation, this is strong evidence that the controlling stockholder constructively received the dividends and then made loans of the dividends to the*94 corporation. Brooks v. Commissioner (C.A. 4, 1929), 35 Fed. (2d) 178. No evidence was presented to show that the dividend of $4,620 was ever paid to Berenice, Dave and William. It is true that they reported the amount of this dividend on their tax returns, but this fact alone is not controlling. See Amelia J. Taylor, 27 T.C. 361 (on appeal C.A. 2). The only evidence of record indicates that on May 31, 1948, the $4,620 dividend was transferred to the "Notes Payable" account. This transaction indicates that in 1948 the dividend had been left with Cab Company as a loan, not by Berenice, Dave and William, but by Jolly, the controlling stockholder.the penciled notation on the notes payable account indicates that the $4,620 was considered a dividend to Jolly, and it is significant that the names of Berenice, Dave and William did not appear opposite the $4,620 entry on the notes payable ledger. Petitioners characterize this evidence as a "slender wisp" upon which to tax the $4,620 as dividends to Jolly in 1948. But petitioners have offered no "wisp" of their own to support their arguments. The evidence that would make it clear when the $4,620 dividend was paid, *95 if ever, and to which stockholders, was certainly available to petitioners upon whom the burden of disproving the respondent's determination rests. Since they have chosen to remain silent as to the actual disposition of the dividend reflected on the Cab Company books, we hold upon the basis of the facts available that respondent correctly treated the $4,620 as a dividend to Jolly in 1948. Respondent further determined that certain dividends paid by Tri-State were taxable income to Jolly and Berenice in 1948 and 1949. The dividends in issue are a $4,000 dividend check dated December 2, 1948, payable to Dave, and three checks totaling $6,048.60 issued to Dave during 1949. In our view, respondent was correct in treating these dividend payments as income to Jolly and Berenice. An assignment of the right to receive dividends on securities, as distinguished from a relinquishment of control over the securities themselves, will not relieve the assignor from paying tax on the dividends. Carlton B. Overton, 6 T.C. 304, affd. (C.A. 2, 1947) 1 Fed. (2d) 155; see Helvering v. Horst, supra.*96 The absence of Dave's signature on the stubs of the stock certificate of Tri-State, the fact that Jolly furnished the consideration for the issuance of the shares and retained the certificates in his office, and the self-serving and inconsistent explanation offered by petitioners that Jolly loaned funds to Dave for the purchase of the shares (an explanation contradicted by all the facts) lead to the conclusion that Jolly alone controlled the stock of Tri-State issued in Dave's name. See McCann v. Commissioner (C.A. 6, 1937), 87 Fed. (2d) 275. The arrangement was a device contrived by Jolly whereby he could assign dividends from Tri-State to Dave without giving up control over the stock and without including these funds in his own taxable income. This conclusion is substantiated by evidence relating to the disposition of the dividend check for $4,000 issued by Tri-State in 1948. This check was endorsed by Dave to Dry Cleaning for deposit only. But when Dry Cleaning deposited the check, the corporation credited a note payable account in Jolly's name. Subsequently, the $4,000 was repaid by Dry Cleaning, not to Dave, but to Jolly. Of this amount $3,667 was deposited to Jolly's*97 personal account and $333 of the dividend was used to issue stock, the stub of which was signed by Jolly. Clearly, the dividend payment of $4,000 was never intended for Dave but was in actuality a dividend to Jolly. With respect to the three dividend checks totaling $6,048.60 which were issued in 1949, petitioners have offered no evidence to show that respondent erred in treating this sum as a dividend payment to Jolly. The only facts in the record indicate that two of the checks were endorsed by Jolly as trustee for Dave and that Dave endorsed the third. All of the checks were stamped "for deposit only" at Leader Federal, but none of the bank records of the accounts at Leader Federal show that any such deposits were made on the dates indicated on the backs of the checks. From this evidence, we can only conclude that Jolly either assigned the dividend payments to Dave or used the funds for his own purposes. In either event, the dividends paid by Tri-State in 1949 are properly includible in the taxable income of Jolly and Berenice for that year. In support of their position that Dave was the owner of the Tri-State stock, petitioners rely on Marshall v. Commissioner (C.A. 6, 1932), 57 Fed. (2d) 633;*98 Bardach v. Commissioner (C.A. 6, 1937), 90 Fed. (2d) 323; and Essie Irene Gaffney, 36 B.T.A. 610, wherein it was held that the transfer of corporate stock on the books of a corporation is a sufficient delivery to consummate a gift. It is to be noted, however, that in each of those cases the facts disclosed deliveries of stock certificates from a husband to his wife, deposits of stock certificates in a safe deposit box to which the wife had access or repeated actions and statements on the part of a husband and wife indicating that gifts had been made. In the present case there was no delivery of stock certificates to Dave. The Tri-State stock certificates were kept by Jolly at all times and Dave had no access to them. Dave was not a minor when the stock was issued in his name and there is no evidence that he was not capable of managing his own business affairs. Nor does the record reveal any evidence of intent on Jolly's part that Dave was to be the active owner of an interest in the corporation. On the contrary, the evidence reveals that Dave was completely subservient to Jolly's dominant influence. It is further to be noted that Tri-State is a Tennessee*99 corporation and that the alleged transfer of stock took place in Tennessee. In Tennessee the rule, as announced by the Supreme Court of Tennessee is that if a donor of stock retains control of the stock certificate and keeps it in his possession, there is no valid gift, even though the stock certificate bears the name of the alleged donee. Figuers v. Sherrell, 178 S.W. 2d 629; Collins v. Alexander, 260 S.W. 2d 414. Since the only evidence of delivery with respect to the Tri-State stock involved herein is the appearance of Dave's name on the stock certificates, Jolly did not make a valid gift of the stock to Dave under Tennessee law. In addition to the factual differences mentioned above, it does not appear that any of the cases relied upon by petitioners involved a state rule such as prevails in Tennessee. Accordingly, the cases relied upon by petitioners are distinguishable. Income from Unexplained Sources Respondent determined that the income of the individual petitioners for the years 1946 to 1949, inclusive, should be increased by certain amounts of "other income." Respondent's agent determined these amounts by computing the excess of currency*100 disposed of in these years over currency available from known sources. Petitioners contend that this method of computation was arbitrary and unreasonable. Respondent's agent made an analysis of currency, other than checks, from all known sources by Jolly and the members of his family. These sources included salaries paid in cash, directors' fees, rents, Coca Cola receipts and currency received by cashing checks issued by third parties to corporations controlled by Jolly, which checks were diverted to Jolly's use. The agent made a similar analysis of cash dispositions, which consisted primarily of deposits of currency in the various bank accounts in the names of Jolly and his family plus currency used to make allowable charitable contributions. In computing cash dispositions, respondent's agent did not take into account any amounts which might have been spent for the support of Jolly's stepmother, for groceries, for repairs or improvements to real estate, or for the payment for equipment acquired from Jolly Maintenance Service by Tri-State. From these analyses, respondent's agent determined the amounts of excess cash dispositions over cash available from all known sources. Respondent's*101 election to use a method of computing unreported income based on the excess of cash dispositions over cash available, has been recognized and upheld by this Court. Max Cohen, 9 T.C. 1156, affd. (C.A. 10, 1949) 176 Fed. (2d) 394; Robert L. Carnahan, 9 T.C. 1206, affd. (C.A. 10, 1949), 176 Fed. (2d) 394. Petitioners have offered no evidence to show that the analyses submitted by respondent's agent were incorrect or that the agent failed to take into account additional sources of cash income from which the dispositions could have been made. Respondent's determination of additional income by this method was not arbitrary and that determination is accordingly sustained. As previously noted, respondent conceded at the hearing that a check in the amount of $1,944.08 deposited in Jolly's Leader Federal account on June 9, 1947, was not income to Jolly in 1947. This amount must be eliminated from respondent's determination of "Other Income" for 1947. Capital Gains Respondent determined that Jolly's income for 1946 and the income of Jolly and Berenice for 1948 and 1949 should be increased by certain net capital gains. One of these*102 items of capital gain in 1949 was an alleged "short-term gain on Memphis Dry Cleaning Inst. stock." Petitioners contend that this determination was erroneous on the ground that Jolly was not the owner of any Dry Cleaning stock and could not, therefore, have derived gain from the stock. On the basis of the evidence of record, we hold that Jolly was the actual owner of the Dry Cleaning stock issued in Dave's name. Jolly helped organize the corporation and performed substantial services for it. He signed the stub of the stock certificate issued to Dave and he kept the certificate in his office. Since Dave was not a minor when the stock was issued in 1948, Jolly's retention of control over the stock is inconsistent with any claim that the stock was a gift to Dave. If Jolly had wished Dave to hold an actual stock interest in Dry Cleaning, he could have delivered the stock certificate to him. His failure to do so is strong evidence that he was the owner of the stock. Respondent's agent testified that disallowance of certain salaries and other items claimed by Dry Cleaning resulted in distributions from Dry Cleaning, part of which were of capital and part of which were of earnings. When*103 earnings were exhausted, remaining distributions were treated as returns of capital which reduced the basis of the capital stock of Dry Cleaning. Any distributions in excess of basis were treated as capital gain. Since we have held that Jolly owned the Dry Cleaning stock in question, and since petitioners do not attack respondent's method of computing the capital gain, we hold that respondent's determination in this regard was correct. Charitable Contributions Respondent disallowed deductions for certain charitable contributions claimed by Jolly on his returns for 1946 and 1947 and by Jolly and Berenice on their returns filed for 1948 and 1949. The facts are clear that the disallowed contributions were never made by either Jolly or Berenice, and petitioners have offered no evidence to the contrary. Accordingly, respondent's determination in this regard is sustained. Dependency Exemption The return filed by Jolly for 1947 and the returns filed by Jolly and Berenice for 1948 and 1949 reflected a claim for an exemption for Jolly's stepmother, Nellie F. Jolly. The only evidence submitted by petitioners in support of this claim, however, was the uncorroborated, self-serving testimony*104 of petitioner Jolly. The stepmother was never called as a witness and no other member of the family testified with respect to her relationship with the Jollys. No documentation of amounts allegedly spent by Jolly for her upkeep appears in the record. There was no error in respondent's disallowance of the claimed exemption. "Commissions" The income tax returns filed by Jolly for 1946 and 1947 and by Jolly and Berenice for 1948 reflect amounts of income entitled "commissions." Jolly testified that these "commissions" represented his estimate of certain rents, interest, dividends and directors' fees which he failed to report on his returns. Petitioners now contend that these "commissions" should be offset against the amounts determined by respondent as unreported from these sources. This contention is devoid of merit. No evidence was presented indicating that there was any relationship between "commissions" listed on the returns and the omitted items of income. Jolly himself testified that he included the "commissions" item on his returns to cover any "omissions or mistakes that I might make in my return." The "commissions" were listed under the salaries and wages schedule of each*105 return, and Jolly's reported receipts from sources such as interest and dividends were listed under separate headings. The accountant who made up the returns was not told what items were included in "commissions." In the absence of more compelling evidence than this, Jolly's testimony is inherently unworthy of belief. Consequently, we reject petitioners' argument with respect to "commissions." Fraud The record is replete with clear and convincing evidence that in each of the taxable years involved at least part of the deficiency of each of the petitioners was due to fraud with intent to evade tax. Petitioners do not seriously contest our findings in this regard. The uncontradicted evidence of the willful diversion of checks and other income from the books and tax returns of the corporate petitioners and the deliberate omission of these sums from the tax returns of the individual petitioners is powerful proof of fraud. United Mercantile Agencies, Inc., supra; Davis v. United States (C.A. 6, 1955), 226 Fed. (2d) 331. The evidence is more compelling in view of Jolly's position as president of both petitioner Cab Company and petitioner Motor Livery, his*106 control of the corporations as sole stockholder of Motor Livery and majority stockholder of Cab Company and his deliberate instructions to his supervisors, themselves officers of both corporate petitioners, to livert the funds to him without recording them on the corporate books. Further evidence of fraud appears from Jolly's manipulation of excessive rental payments from the corporate petitioners to members of his family in order to obtain deductions for the corporations and to effect assignments of income to his wife and sons. In addition, Jolly deliberately omitted income from other businesses from his tax returns, and he and Berenice grossly overstated their charitable contributions. Jolly's conviction by a Federal jury after a plea of not guilty on four counts of willful tax evasion and his sentence to ten years imprisonment is of itself compelling evidence of fraud. Abraham Galant, 26 T.C. 354. When this circumstance is added to the other clear and convincing facts, the evidence of fraud becomes conclusive. Respondent was clearly correct in determining additions to tax for fraud under section 293(b) against all petitioners for all of the taxable years and in determining*107 that the returns filed by petitioners were false or fraudulent with intent to evade tax within the meaning of section 276(a). Accordingly, the statute of limitations has not run as to any of the petitioners on any of the years involved. In view of this holding, we need not decide whether petitioner Jolly, because of the original conviction for tax evasion, is collaterally estopped from contesting fraud. Similarly, consideration of the question whether petitioners omitted from gross income more than 25 per cent of the gross income stated in their returns is unnecessary. Addition to Tax for Substantial Underestimation Petitioners offered no evidence and present no argument with respect to respondent's determination of additions to tax under section 294(d)(2) against the individual petitioners for the years 1947, 1948 and 1949. Accordingly, that determination is sustained. Decision will be entered under Rule 50. Footnotes*. Sum of these represents balance not accounted for as rebates or refunds above.↩